This morning's calendar is United States v. Gorelli, 15-3-2-2-1. Mr. Williams. Thank you, Your Honor. Good morning. There are two issues in this case. One is procedural, that is, whether or not Mr. Gorelli waived his right to appeal this particular issue. And then the other is, if we get by that, the substantive issue is whether or not he should have gotten the gun enhancement. We don't think that he waived his right to appeal for a couple of reasons, and the first reason is if you look at the waiver that's contained in the plea agreement, it's that the conviction of sentence of—he waived appealing the conviction, and he's not doing that here, or the sentence of imprisonment that was imposed by the court, 16 years, and he's not doing that here. Now, I understand that in the Ari Vailo case that this court said that you waive Rule 32 rights that you have, including objections to what you believe to be inaccurate information in the pre-sentence report, but that case is somewhat different than the one we have here. In Ari Vailo, the defendant had administrative remedies through the Bureau of Prisons to appeal whatever issues he had about his confinement. Mr. Gorelli has no such administrative remedies because of the Bureau of Prisons rule that excludes people who get a gun enhancement from receiving a year off of their sentence. That rule was adopted a few years ago. Everyone who practices criminal defense in the federal system knows that you don't get credit if you successfully complete the ARDAP program. And that goes to the second point, is that Mr. Gorelli has a liberty interest in the court considering our issue. That wasn't the issue in Ari Vailo. So we think that, A, Mr. Gorelli did not waive his right to appeal Judge Murtha's finding that he should get the weapons enhancement, and, B, if he did, then he has a due process right to have this issue aired by this court. And when you look at all of the other decisions that talk about waiving right to appeal, in almost every one of them the defendants or appellants, as it were, were trying to get a break on their sentence. They wanted a lower sentence for whatever reason. The judge didn't consider certain factors. The judge didn't consider the motion for downward departure. In one case, the judge upwardly departed without notice. But in our case, Mr. Gorelli had agreed to a sentence of 16 years. He agreed to certain guideline factors, including weight, role in the offense, obstruction of justice, et cetera. But the one thing that he wouldn't agree to, and this is clear throughout this case, is that he would not agree that he either possessed firearms in the furtherance of the conspiracy that's charged in count two, or that he possessed firearms related to the drug dealing. And I think from his perspective, and a waiver has to be seen from his perspective, that when he signed this agreement and waived his right to appeal the sentence of imprisonment, he didn't think he was waiving his right to appeal, judge any finding that the weapons enhancement applied. And that was a central issue at the sentencing hearing, as you know. The government called Benjamin Whitney and Jeffrey York to testify about the guns. And there really wasn't a whole lot of information that tied the guns to anything that Gorelli did with regard to drugs. York said they like to go out and target shoot. And Whitney basically said the same thing. And he said they did these room clearing exercises with unloaded firearms at his house. But there was really nothing that connected Gorelli's possession of those firearms to anything that he did with regard to drug dealing. And since plea agreements are construed- The matter that he sought to have taken out of the pre-sentence report, did it have any legal effect, any status effect on him, or was it just derogatory information? I think it affected, Your Honor, the confinement and how he would be treated and classified in the Bureau of Prisons. But it didn't affect the service of the sentence itself, if that's the right way to put it. It didn't. It was information that would change his status with respect to rules in the administration of prison. Correct. And the idea is that within the Bureau of Prisons, he had a right to grieve or appeal the rules or his confinement. But Mr. Gorelli has no such right because of the Bureau of Prisons rule that exclude people who, not from the program itself, but from getting credit for that up to a year off. And a year of a person's life is a long time. So you're asking us when Aravello describes or discusses eligibility for programs, you're asking for a carve-out, that is programs that have- where if you are rendered ineligible for whatever reason from the program, that has an impact on the length of your incarceration by the BOP? Well, let me explain. The weapons enhancement itself does not mean that the person is excluded from participating in the residential drug treatment program, which is a 500-hour program. What it does is it excludes those who successfully complete the program from getting any time off of their sentence. And other than, as I understand it, other than good time, there's very few opportunities to have your sentence reduced. And you can see in the- You say time off if you're referring to early releases. Yeah, you get up to 12 months if you successfully complete it. If you get- whether you get any time off is up to- it's within the discretion of BOP, but you're eligible for up to a year off if you complete the program successfully. And Gorelli, because of this finding by Judge Murtha, is ineligible for that time off. That's why, unlike Aravello, he does have a liberty interest in this particular issue. And you can see from the judgment that Judge Murtha recommended two things. Well, he recommended that the Bureau of Prisons allow him to participate, and he also recommended that he get time off. And you can see from the transcript that he knew, Judge Murtha knew, why we were objecting to the inclusion of what we believe to be inaccurate information in the pre-sentence report. If you read Jeffrey York's testimony, it's ludicrous. He says, I went to a particular gun shop and bought a particular handgun, gave it to Gorelli, and I never saw it again. But we had documents to show that when Mr. York was arrested, that same gun that he purchased at that store that he claimed he never saw again was seized by the ATF agents. So we know that wasn't true. And then an Army veteran claimed that he purchased an AR-15 assault weapon for Gorelli, and then identified a picture of Gorelli with a bolt-action rifle as the one he purchased for him. It didn't add up. And we think that the Court should remand the case for further consideration by Judge Murtha about the finding that he was, he should get that sentence enhancement for possessing weapons. Thank you very much. Thank you very much. Thank you. Mr. Drescher. Good morning. May it please the Court. Mike Drescher from the U.S. Attorney's Office in Burlington. Jason Gorelli and his counsel negotiated a plea agreement by which the parties agreed that he would receive a sentence of 16 years. And in exchange for that agreement, Jason Gorelli and the government So the argument, as I understand it, is that Arabello is not quite on point because there is, by dint of the fact that his ineligibility for the residential drug treatment program, he is not going to be eligible for early release. And that's a liberty interest that is categorically different from the interest at stake in Arabello. Can you address that? So the panel in Arabello recognized that the disputed aspects of the PSR in that case could very well have adverse effects for Arabello's treatment by the Bureau of Prisons. The panel in that case didn't delve into the nature of that, what exactly was going to harm Arabello in that case, but certainly recognized the prospect. Is institution assignment eligibility for programs within the BOP a computation of salient factors? That's what it says. So computation, by computation we could glean that they're talking about whether he'd be eligible for early release. Certainly the task of the district court is to impose a sentence, part of which is a term of incarceration, and the district court has to necessarily land on a specific period of time. In this case, assisted by the parties' negotiation, Judge Murtha agreed that the 16-year sentence was reasonable. It was reasonable even though it was a substantial variance from the guideline range of 360 to life, but it was nonetheless reasonable. After the PSR was issued and after Mr. Gorelli objected to the presence of the recommendation of the dangerous weapons enhancement, the government joined issue and put on evidence to echo what was already in the PSR with regard to Mr. Gorelli's use and possession and firing of guns during the course of the conspiracy that he's convicted of. With regard to Judge Loyer's question as to distinguishing between Arabello in this case, it's our suggestion that the case for honoring the appellate waiver is even stronger in this case because in Arabello there was no suggestion that the PSR was anything but inaccurate. The categorical rule, the categorical proposition that a waiver of appeal, if the sentence is within certain bounds, is troublesome. As we have progressed through the years dealing with it, very, very soon courts decided, oh, yeah, but there are certain things that you're talking about, stuff that can't be known by the defendant at the time that he waives, things that will happen afterwards. We're not going to say that, for example, if the sentence was affected by race bias or something like that, that comes within the waiver. And there were more and more decisions that the waiver does not preclude certain types of arguments with respect to things that would happen afterwards, which could not have been known at the time that the defendant waived. So, I mean, suppose, for example, that the pre-sentence report contains a statement which the defendant claims to be able to prove is completely incorrect, that he has organized crime connections and various stuff about him, which will cause him to pass his sentence or most of it or a lot of it in solitary confinement or in maximum security when there's absolutely no reason for it, or, you know, one that he could get out earlier were it not so. I'm just troubled by the proposition that to interpret Aravella, or perhaps that's exactly what Aravella said, that if you've waived, you waive everything that's in the pre-sentence report. I do think there is the suggestion in Aravella that there are limits to honoring the waiver. And this Court has made clear in other cases if a sentence is based on impermissible considerations, based on race or indigency or the like. There are lots of things that courts have gradually excluded from the scope of the waiver because it just didn't seem appropriate that the waiver should cover them. In the case of Aravella and the case of Boussareth, this Court has twice honored the waiver where in the case of Aravella there was no dispute but that the PSR was wrong and the sentencing court just didn't get to fix it. The waiver language in that case is almost identical to the waiver language we have in this case, and this Court enforced the waiver. In Boussareth, the judge just didn't resolve the disputes in the PSR, and so it's an analogous situation. I can certainly imagine a PSR that is so derogatory, so defamatory, and so wrong, and that was not subject to process before the district court that this court could, on a very principled basis, decide not to enforce the waiver. I suppose it was subject to process before the district court made a bad decision, a decision that abused discretion. The waiver means that the Court of Appeals can't consider it. No, we don't consider it, never mind how wrong the district court was. I guess we're in the range of hypotheticals, Your Honor, at this point because that's clearly not the case we have in front of the panel today. I don't know if it is. It's clearly not. This is not just a case of something that the defendant feels reflects badly on him and he doesn't want to present his report. He argues that it has a practical effect on his eligibility for the time that he gets out of prison. So it's not just some information. He said, I never did that. That's something I never said I never did, where it has really no great consequence one way or the other. But when he executed that plea agreement, he acknowledged that he agreed not to appeal or otherwise challenge the sentence imposed even if it was based on a guideline analysis different than that which had been anticipated by him and his counsel and the parties. But that's not what he's challenging here. He's saying there's a mistake in the pre-sentence report. The pre-sentence report is wrong. That's going to deprive me of a year off my sentence in the event that I should complete the 500-hour drug program. That's his argument. What's wrong with that? It might be easier if you address the merits of it. But that's his argument. To a degree, it's speculative because we don't know if he's going to successfully complete the 500-hour drug program, and if he doesn't, he doesn't get the benefit. But his argument is that this is the only mechanism that he has to at least render him eligible for early release of one year if he successfully completes the 500-hour drug program. So the court obviously, as a matter of law, has to calculate the guidelines. And the presence of the dangerous weapon enhancement forces the issue for the court to analyze what's in the PSR and what's in the sentencing record with regard to the presence of the dangerous weapon. And so in that regard, the guideline analysis and the content of the PSR merge into the same question. And when Mr. Gorelli decided to agree and promise not to appeal an adverse guideline calculation that he didn't like, that necessarily took into consideration the prospect of a dangerous weapon enhancement. Suppose we disagree with you on all of that. Do you disagree with the defendant that the evidence didn't support the enhancement? Absolutely, Your Honor. The evidence on that question included Mr. Gorelli engaging in counter-law enforcement exercises using firearms with a co-conspirator redistributor within the same residence from which he- There were two witnesses that described his use or his possession of what was said. There were two that testified at the sentencing hearing, and there was an additional statement in the PSR from another co-conspirator. Mr. Whitney, at the sentencing hearing, testified as to Mr. Gorelli insisting on the two of them engaging in these tactical- Of course, this doesn't really answer the bigger question of what you're saying. We don't, because of the appellate waiver, don't have jurisdiction. And that's the question. So whether or not it's right that your argument that there was compelling evidence or some evidence, we've still got to grapple with whether, for example, Caravello is binding in the context of this case. You're not saying, are you, that we don't have jurisdiction. You're saying we should simply dismiss the appeal without considering the argument, not that we don't have jurisdiction. Based upon the waiver, I think you should dismiss the appeal. We have our point 2B in the brief that suggests the court wouldn't have jurisdiction. I'm not- I don't intend to take up any of the panel's time pursuing that argument today. But if your honors decide not to dismiss the appeal, certainly the evidence is compelling that he possessed guns in the same residence where he sold drugs. And not only did he possess the guns, he engaged in practicing to avoid law enforcement. And that would clearly fall within the appropriate application of the dangerous weapons enhancement. The dangerous weapons enhancement informs the treatment of the Bureau of Prisons. And for- on a factual basis, we should win if we don't win on the appellate waiver. Am I correct that our court is facing a similar waiver where the person said, okay, I won't appeal as long as my sentence is within this range. Was that allowed to appeal a restitution order? That if anything, the community was- The case I believe your honor is referring to, the concern of the panel was whether the sentence- it was a term of probation that the district court fashioned out of- and the probation term was longer than anticipated. And the district court explained the court wanted to manage and encourage the ongoing payment of restitution. And there was a concern in that case because of the indigency of the defendant. And so this- They didn't allow it to be raised, did they not? Notwithstanding the clear facial meaning of the contract of the plea bargain, which you can't raise it if you get a sentence that's within these- This court did in that case, out of concern for a sentence based upon an impermissible unconstitutional status, that is the status of indigency. Ultimately reaching the merits and affirming the district court. But got around the waiver out of concern for a potentially unconstitutional basis for the sentence. Certainly there's no suggestion that anything in this process rises to the level of unconstitutional consideration. Unless the panel has other questions, which I'd be happy to try and answer, we ask that the court affirm the judgment of Judge Murtha. Thank you very much. I will reserve the decision. And we'll hear argument next in United States v. Clark, Anderson.